FIRST BANK & TRUST COMPANY OF SOUTH BEND,
EXECUTOR OF ESTATE OF SPIRO *v.* TELLSON.

[No. 18,474.   Filed April 1, 1954.
Rehearing denied May 14, 1954.]

*Lenn J. Oare, Paul R. Moo* and *Seebirt, Oare & Deahl,* (of Counsel) of South Bend, for appellant.

*Frederick K. Baer, Samuel Schulman,* both of South Bend, and *F. LeRoy Wiltrout,* of Elkhart,.for appellee.

ACHOR, J.—This is an action on a claim filed by the appellee against the estate of Betty S. Spiro, deceased, for miscellaneous services rendered from August 1, 1941, to the date of decedent's death on August 10, 1950.

The issues were formed on appellee's amended claim, which simply alleged that the decedent and her estate were indebted to appellee in the sum of $40,000.00 for services rendered to the decedent at her specific instance and request from August 1, 1941, to the date of her death on August 10, 1950. A bill of particulars enumerating said services was attached, filed with, and made a part of the claim. In special findings of fact and conclusions of law made by the court at the conclusion of the trial, the court found that appellee devoted 7,200 hours to services for the decedent and that such services were of the reasonable hourly value of $2.50. Pursuant to said findings and conclusions, the

court thereafter entered a judgment for the appellee against the appellant in the amount of $18,000.00.

Errors assigned and relied upon by appellant as cause for reversal were (1) the overruling of appellant's motion to require appellee to make his bill of particulars more specific; (2) the overruling of appellant's motion for new trial, which motion asserted the following grounds:

(a) The court erred in the assessment of the amount of recovery, in this, that the amount was too large.

(b) The decision of the court was not sustained by sufficient evidence and was contrary to law.

(c) The admission of certain evidence over objection, and the exclusion from the evidence of certain oral and written statements made by decedent, and the exclusion of decedent's last will and testament, together with certain codicils thereto, and the certificates of probate thereof.

Appellant's first contention is without merit. The law is well settled that the ruling to make a motion more specific is almost wholly within the discretion of the court. 1 Gavit's Indiana Pleading and Practice, §115, pp. 601-604; §116, pp. 605-606; Flanagan's Indiana Pleading and Procedure, §132, Ch. 31, pp. 185, 186.

Furthermore, as stated in 1 Henry's Probate Law and Practice, §300, p. 372:

"A formal complaint is not required of a claim against an estate, but there must be such a statement of fact as will show a legal liability on the part of the estate to the claimant, and indicate to the estate's representative what he is called upon to meet, with reasonable certainty; and the statement must contain all the facts necessary to show, prima facie, that the estate is lawfully indebted to the claimant. All that is necessary by way of a complaint is a statement containing sufficient sub-

stance to apprise the administrator or executor of the nature of the demand, and such a statement that a judgment based thereon may be used to bar another suit for the same claim. . . ."

Appellant contends secondly that the court erred in the assessment of the amount of recovery ($18,000.00) in that the amount was too large. Particularly, appellant contends that the evidence does not support either the finding that the appellee had devoted 7,200 hours to the performance of services for decedent, or that the value of such services was $2.50 per hour.

The testimony regarding the nature and hourly value of the services performed by appellee is subject to the same indefiniteness as was the testimony regarding the number of hours of services performed.

The nature of the services performed by appellee is indicated by the following facts in evidence: The services varied from a mere passing of personal pleasantries to the hiring of nurses and chauffeurs, settling family differences, calling doctors when needed, etc., to caring for the business and property of decedent. One witness testified regarding these services as follows: "I always thought Albert Tellson was her legal adviser, as far as I could see. Every time she wanted to talk over business she would always have me call Mr. Tellson to come up and talk to her. She said, 'Go call Albert: I want to talk to him about my business.'" Another witness testified, "Mrs. Spiro wouldn't trust others with bills and receipts and things, business papers. Mr. Tellson was the only person that she would trust with that sort of document outside of her attorney."

The evidence disclosed further that decedent was a very demanding person; that she had very few close relatives or friends; that she was approximately 79 years of age at the time of her death; that her weight

was around 275 pounds; that during her lifetime she suffered from dropsy and had difficulty getting around; that she had holdings valued at approximately $850,-000.00; that she owned a number of rental properties, including several filling stations and some store buildings all in South Bend, and a number of securities, from which she had a substantial income; that Mr. Tellson was her confidant and that she, at times, entrusted him with large sums of cash—at one time in excess of $50,000.00; that he was the person to whom she entrusted taking care of her own burial arrangements and the burial arrangements of her brother. Evidence in regard to the value of his services varied from 75 cents to $1.00 on one extreme, to $4.00 an hour on the other.

With regard to the number of hours of services performed, several of the witnesses testified substantially as follows: "During the period that I was in Mrs. Spiro's employ, Albert put in an average of about 15 or 18 hours a week that I know of. Some days he was there maybe a couple of hours, another day a half hour, maybe another day an hour, maybe another day ten minutes. Sometimes he would be there in the evenings and on Sundays. My estimate is conservative and I am not taking into account times that he might be with her that I wouldn't know about." It is a fact that, although there were a large number of witnesses who testified as to the nature of appellee's services, their testimony in each case was limited to a relatively short period of their respective employment. As a result thereof, there was no direct testimony as to the continuous nature of appellee's employment during all of the nine-year period, upon which appellee's claim is predicated. There being evidence that the services performed by appellee were continuous during the nine-year period, and there being no evidence to the con-

trary, it was inferred that the hours and nature of service continued substantially the same during said period.

Appellant complains that the facts, as found by the court with regard to both the number of hours of services performed by appellee and the value of such services, are not sustained by positive testimony which coincides directly with the facts found, and, therefore, contends that the findings and judgment are not supported by the evidence. Upon this issue, appellant relies upon the case of *Pearl Creamery Co.* v. *Montpelier Creamery Co.* (1951), 123 Ind. App. 401, 101 N. E. 2d 709. However, in that case, upon the facts stipulated, plaintiff, if entitled to recover at all, was entitled to recover a fixed sum. Under such circumstances, the amount of recovery was a question of law for the court and not, as here, a question of fact. The rule is well established in this state that where the reasonable amount of recovery is in dispute under the evidence the amount awarded cannot be considered excessive if it is within the scope of the evidence before the court. Our courts have treated this issue as follows: "The amount of the recovery assessed is below the amount shown by a part of the evidence, therefore the amount of recovery cannot by this court be held too large." *Western Union Telegraph Co.* v. *Mart Jr.* (1939), 106 Ind. App. 590, 595, 17 N. E. 2d 500; *Shover, Administrator, et al.* v. *Myrick* (1892), 4 Ind. App. 7, 10, 30 N. E. 207; *Durham* v. *Hall et al.* (1879), 67 Ind. 123, 131. Substantially the same question regarding proof of the exact number of days and hours during which services were performed was raised in the case of *Hull* v. *Burress* (1950), 120 Ind. App. 507, 515, 93 N. E. 2d 213. In that case this court stated:

"The appellant, however, insists there is a failure of proof in that appellee has failed to produce direct evidence of the performance of the services for the exact days and hours set forth in the claim, and that such burden was upon appellee.

"Under our statute the claimant's lips were sealed, and for many of the hours only claimant or decedent would have direct knowledge of the performance of such services. But the testimony of the witnesses that the claimant was the decedent's private nurse, and that they saw claimant and decedent two or three times a day would justify a reasonable inference that the services were continuous for the hours alleged in the claim.

"The exactitude insisted upon by counsel for the appellant would amount to rules of proof of absolute technical perfection, and above and beyond any reasonable standards of proof requirements, and such requirements would be wholly impracticable of application to the degree insisted upon in determining facts affecting human obligations in courts of justice."

Appellant contends further that the judgment is not sustained by sufficient evidence and is contrary to law because of the lack of evidence that claimant had any contract, agreement or understanding with decedent for payment for the alleged services. As contended by appellant, the law is well settled that a judgment in favor of the claimant must rest upon contract, express or implied, and not upon and presumed moral, ethical or equitable basis. 34 C. J. S., §452, p. 285; that necessary elements of such contract are intention to pay on the one hand and expectation of payment on the other. *Winston* v. *Kirkpatrick* (1941), 110 Ind. App. 183, 188, 189, 37 N. E. 2d 18. That mere hope or design for reward is not sufficient. *Hans* v. *Hollowell, Admx.* (1938), 104 Ind. App. 602, 603, 12 N. E. 2d 364. It is also true that the burden of proving the existence of such a contract rests upon

the claimant. *Hunt* v. *Osborn* (1907), 40 Ind. App. 646, 648, 82 N. E. 933.

Appellant does not contend that there is no evidence of an implied contract between decedent and appellee. However, it vigorously asserts that the evidence of such a contract is dependent upon alleged conversations of decedent with regard to payment for such services, and that under established rules of evidence, the evidence before the court was not sufficient to support the fact of a contract. Appellant, on the one hand, relies heavily upon the proposition that ". . . The evidence in claims of this character in all cases should be clear, distinct, and positive. . . ." 1 Henry's Probate Law and Practice, §303, p. 382. On the other hand, as against such a rule regarding the burden of proof, appellant relies upon statements made by various courts and authorities to the effect that ". . . Testimony as to the oral statements of deceased persons is . . . regarded as the weakest kind of evidence and subjected to the closest scrutiny. . . ." 31 C. J. S., §266, p. 1018. See cases cited under note 21.

It is appellant's position that, under the above set of circumstances, the evidence failed to meet the required standard of proof and that, therefore, the judgment was not sustained by sufficient evidence. Appellant's contention is not tenable. Although courts of appeal have used the language referred to and relied upon by appellant, regarding the probative value of evidence, nevertheless our courts have uniformly held that ". . . the weight of the evidence and the credibility of the witnesses are for the trial court . . . not the reviewing court, to determine." Flanagan, Wiltrout & Hamilton's Indiana Trial and Appellate Practice, §2786, Ch. 56, p. 366.

We know of no instance where a claim for services has been denied although supported solely by declara-

tions of decedent. However, we are neither permitted nor required to express a conclusion upon that issue because, in the case before us, the declarations of decedent are supported by numerous corroborating facts and circumstances. Our courts have held on numerous occasions that, although the elements of intention to pay on the one hand and expectation of compensation on the other must be found to exist, such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts and circumstances which may reasonably be said to throw light upon the question. *Winston* v. *Kirkpatrick, supra; Moslander* v. *Moslander's Estate* (1941), 110 Ind. App. 122, 129, 38 N. E. 2d 268; *Weir* v. *Lake* (1942), 112 Ind. App. 318, 326, 41 N. E. 2d 828. As stated in the *Winston* case, *supra,* at page 189:

". . . The law is well settled in this State that: 'Where the services are performed by one not a member of recipient's family, an agreement to pay may be implied from the mutual relations, the situation and conduct of the parties, and from the nature and character of the services rendered.' . . ."

Also, in the case of *Weir* v. *Lake, supra,* the court stated:

"We know of no reason why the declarations of a deceased person, especially when they are corroborated by conditions and circumstances, are not sufficient to establish the existence, terms, and conditions of an express oral contract. . . ."

Appellant further challenges the sufficiency of the evidence for the reason that the complaint alleged liability on an express contract, whereas the evidence adduced would, at most, support only an implied contract. However, upon this issue,

our courts have held that a claimant may set up a claim on one theory and recover on a different one, as the "theory rule" has no application as to the assertion of claims against an estate, so long as there is no variance either as to the parties, the character of, or the period for which such services are performed. *Logan* v. *Hite, Admr.* (1938), 214 Ind. 233, 13 N. E. 2d 702; *Masters* v. *Jones* (1902), 158 Ind. 647, 64 N. E. 213; *Caldwell* v. *Ulsh* (1916), 184 Ind. 725, 112 N. E. 518.

Appellant next contends that the court erred in receiving the opinion testimony of certain witnesses as to the value of the services performed by appellee. Appellant claims that certain of the witnesses were not qualified as experts for the reason that it was not shown that they were familiar with the reasonable value of the class of services performed by appellee in the communtiy in which they were performed. However, we are confronted by the fact that the services involved were so varied that they were impractical of classification, and by appellant's admission, each of the witnesses had some background of wage scale knowledge. Upon this issue, our courts have stated, in effect, on numerous occasions that ". . . The question as to when a witness is qualified to give an opinion as an expert is in the discretion of the trial court, and this will not be disturbed unless it is shown that the court abused that discretion. We are of the opinion that the court did not err in that regard, as there was *some evidence of his qualifications to testify as an expert.*" (Our Italics.) *Public Utilities Co.* v. *Handorf* (1916), 185 Ind. 254, 262, 112 N. E. 775; *Linton-Summitt Coal Co., Inc.* v. *Hutchinson* (1953), 232 Ind. 369, 111 N. E. 2d 819; *Knapp* v. *Ellyson Realty Co., Inc.* (1937), 211 Ind. 180, 5 N. E. 2d 973.

Appellant also objected to and has assigned as error the admission of answers to hypothetical questions because the questions contained a statement as to the value of decedent's estate. This issue was fully covered in the case of *Plank, Exr.* v. *Combs* (1926), 84 Ind. App. 446, 448, 449, 151 N. E. 342. In that case, this court stated:

". . . Again, if the claim in. litigation is for services in caring for the property as well as the person of the decedent, the extent of the decedent's property may be shown for the obvious reason that such evidence would tend to prove the value of the services. . . ."

Appellant also assigns as error the refusal of the court to strike the opinion statement made by one of the witnesses, Gilbert Young, as to the value of the services rendered, for the reason that a large portion of the testimony of said witness was stricken as hearsay. However, it appears that the opinion statement admitted was based entirely upon what the witness "actually saw and observed." Therefore, the testimony was properly admitted. *Town of Newburgh* v. *Jones* (1945), 115 Ind. App. 320, 58 N. E. 2d 938.

Finally, it was contended that the court erred in refusing the executor's evidence as to decedent's declarations. These were in the form of oral statements and letters written to third parties, and declarations in the decedent's will (including the codicils thereto). Appellant urges particularly that the trial court erred in refusing to admit into evidence the last will and testament and codicils thereto of decedent. It cites the fact that at the same time and over the same period of years, during which the decedent was supposedly recognizing a contractual obligation to Mr. Tellson, the appellee, and was telling a series of chauffeurs and nurses that

he would be "well paid", and that he would be "well remembered," the decedent executed her will and five separate codicils, in none of which did she provide any legacy for him. In fact, in the fourth codicil, dated November 11, 1947, which was excluded from evidence, decedent expressly stated:

> "I have made no promises, either with or without consideration, to make any provision for any person or persons whomsoever.
>
> . . .
>
> "I have also been befriended by Albert Tellson, of 830 North St. Louis Boulevard, South Bend, Indiana, but I have heretofore assisted him by a gift of One Thousand Two Hundred Dollars ($1,200.00) to pay off a mortgage on his home and also given him a lot and building. I am sure that he will feel that I have given him full recognition of his friendship and that I am under no further obligations to him."

Upon this issue, appellant contends first, that if purported conversations, had by decedent with her chauffeurs and nurses in the absence of claimant, were admissible to indicate an intention on the part of decedent to pay for his services then, likewise, concurrent conversations between decedent and other persons in which she indicated a contrary intention should have been admitted. In support of this position, appellant cites the case of *American Sec. Co.* v. *Minard* (1948), 118 Ind. App. 310, 77 N. E. 2d 762. However, that case involved Workmen's Compensation. The declaration was admitted under the *res gestae* exception to the general rule regarding hearsay evidence, to establish the fact that decedent was injured in the course of his employment. Under such circumstances, self-serving declarations made by a decedent are admissible. See 31 C. J. S., §216, p. 956, *Evidence.*

Appellant contends further that there is no basis, in reason or logic, why an instrument of the dignity and solemnity of a last will and testament, the verity ▮ of which is determined by the probate thereof, should not be treated as an exception to the hearsay rule, which excludes self-serving declarations made outside the presence of the claimant. Appellant bases his contention upon the fact that the underlying reason for the hearsay rule is "to prevent the manufacture of evidence." 31 C. J. S., §216, p. 948, *Evidence*. Appellant contends that the reason for the rule does not exist under the particular circumstances here involved, and urges that an exception to the rule should be made to apply. Also, in support of its position, appellant has cited the following cases: *Lohse* v. *Spokane & Eastern Trust Co.* (1932), (Wash.) 15 Pac. 2d 271; *Makinson* v. *Shumick* (1923), 196 Iowa 980, 193 N. W. 407; *Sieg* v. *Sendelbach* (1932), 256 Mich. 456, 240 N. W. 75; *Price* v. *Wallace* (1915), D. Oregon, 224 Fed. 576. However, none of these cases are in point because there were no self-serving declarations in any of the wills involved. In only the first cited case was any objection made to the admission of the will, and, in at least one and possibly more of the jurisdictions involved, self-serving declarations of a decedent are admissible by statute to rebut declarations against interest. The Oregon statute is summarized in 96 A. L. R., at page 688.

As far as we have been able to determine, in all instances where, in the absence of statute, an attempt has been made to admit wills in evidence to obtain the benefit of self-serving declarations therein, such wills have been held inadmissible as contravening the hearsay rule of evidence. *Potter* v. *Smith* (1920), 48 Cal. App. 162, 191 Pac. 1023; *Feulner* v. *Gillam* (1919), 216 Ill. App. 85; *Tyler* v. *Wright* (1911), 164 Mich. 606, 130 N. W.

205; *Hitt* v. *Hitt* (1910), 150 Mo. App. 631, 131 S. W. 369; Bennett's Estate (1903), (Neb.) 96 N. W. 669.

Furthermore, it is contended by appellant that, conceding that these self-serving declarations may not have been admissible to prove the non-existence of a contract, they were competent to prove the "state of mind" or "intention" of decedent, with regard to her relationship with appellee. As authority for this contention, appellant cites Wigmore's Law of Evidence, §1790, p. 237, and 31 C. J. S., §§255, 256, *Evidence.* However, appellant does not make it appear that testimony as to decedent's "state of mind" or "intention" was germane to the issues of the case, except as related to the existence of the contract, express or implied, to pay for the services performed, for which it was not admissible. The same argument, now made by appellant with reference to showing decedent's intentions, was made and rejected in *Eppert* v. *Gardner* (1911), 48 Ind. App. 188, 194, 93 N. E. 550. In that case this court said:

> "It is insisted by counsel for appellant that the court erred in excluding evidence offered by appellant. The reason given for insisting on this proposition is 'that the evidence tended to show that decedent entertained no thought that he was indebted to appellee for the services rendered.' It does not appear that any such statement, if made, was made in the presence of claimant, and could not be considered anything more than a self-serving declaration uttered by decedent."

See also: *Foster, Adm.* v. *Honan* (1899), 22 Ind. App. 252, 53 N. E. 667.

The law on the subject of self-serving declarations has been stated as follows:

> "As a general rule, a self-serving declaration or act of a party is inadmissible in evidence in his favor; and the death of the declarant does not

render his self-serving declarations admissible unless they are admissible by reason of statute.

"Generally a party cannot make evidence for himself by his own declarations, and it is a well established general rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in his favor. . . . Such declarations are equally inadmissible when offered by the declarant's representatives, devisees, or heirs, since, as is noted infra this subdivision, the death of a declarant does not render his statements admissible. . . ." 31 C. J. S., §216 a, pp. 948, 950, 952, *Evidence.*

The rule above quoted is now so firmly entrenched as the law of evidence in this and other states that this court feels that the law, if subject to improvement with respect to the particular circumstance here presented, must be modified by the legislature, as has been done in certain other states.

Judgment affirmed.

NOTE.—Reported in 118 N. E. 2d 496.